Bell, J.
 

 The single question for determination here is whether the Court of Appeals erred in affirming the judgment of the trial court ordering and directing the superintendent to distribute the fund in his hands to the depositors
 
 pro rata
 
 as interest upon their deposits from June 21,1933, to date of payment.
 

 The purpose of the banking act (Sections 710-1 to 714, inclusive, General Code) is to provide security for the creditors and depositors of a state bank.
 

 That act grants authority to the superintendent to take possession of the business and property of any state bank under circumstances enumerated in Section 710-89, General Code.
 

 After he has taken possession of a bank all persons having claims against the bank must present and make legal proof thereof to him (Section 710-90, General Code). The act of taking possession and giving notice thereof vests the title to all property belonging to the bank in the superintendent and each creditor is entitled to his or her
 
 pro rata
 
 proportion of the money realized from the liquidation of the assets of the bank. (Section 710-91, General Code.) The superintendent had exclusive authority to enforce the individual liability of shareholders (Section 710-95, General Code).
 

 A bank in the possession of the superintendent may offer a plan for the resumption of business and may resume business upon compliance with the provisions of Section 710-89a, General Code.
 

 Under authority of the latter section, the plan of resumption in the instant case was formulated, con-
 
 *502
 
 seated to by tbe superintendent and approved by tbe court.
 

 In the consideration of this case it might be well to visualize the situation at the time the superintendent took charge of the trust company.
 

 Here was a financial institution with assets having a book value of about sixty-one million dollars and liabilities of over forty-seven million dollars, and unable to meet its current obligations.
 

 The two principal items of liability were fourteen million dollars due the Reconstruction Finance Corporation and thirty-three million dollars due to depositors.
 

 After February 27, 1933, each depositor could withdraw only one per cent of the amount of his or her deposit, and after June 21, 1933, all deposits were frozen.
 

 When the superintendent took possession of the bank on June 21, 1933, all the assets and property of the bank became his property. By the act of taking possession and posting notice thereof the title to the property vested in the superintendent. As matters then stood, it requires no stretch of the imagination to suppose that the ninety thousand or more depositors were equally as anxious as were the shareholders to see the bank resume business. Nor is it unreasonable to suppose that even the most optimistic shareholder or depositor did not entertain the idea at that time that all creditors and depositors would be paid one hundred per cent on the dollar.
 

 That was the atmosphere in which the plan of resumption of business was promulgated.
 

 The plan was approved affirmatively by depositors whose claims totaled more than eighty-five per cent of the bank’s outstanding deposit liability and by substantially all the shareholders, prior to its submission to the Court of Common Pleas.
 

 
 *503
 
 After the plan had been promulgated, in order to secure the consents of as many shareholders and depositors as could be obtained, advertisements were inserted in daily newspapers, a circular was mailed to shareholders and depositors, in the form of 69 questions and answers purporting to demonstrate to the shareholders, the depositors and all other interested persons the advantages of adopting the plan. The plan itself was given considerable publicity by radio and press.
 

 The plan, of necessity, is quite voluminous and no good purpose would be served in setting it forth in full. Paragraphs four, five, six, seven, eight, nine, ten, eleven and twelve are important in the determination of this case.
 

 “4. The bank will resume business under its present name, The First-Central Trust Company, but the present deposit and other liabilities of the bank remaining after allowance of set-offs shall be proportionately reduced in the amount of eighty per cent (80%), so that the resuming bank shall be liable at the date of resumption to every depositor only in the amount of twenty per cent (20%) of his frozen deposits (less offsets and proper deductions) which may be withdrawn by him at any time, and all other known creditors (except the Reconstruction Finance Corporation) will be entitled to be paid twenty per cent (20%) of the amount of their claims. Because of the expense of obtaining consents and the expense of making payments in small amounts, all deposits of ten dollars ($10) or less will be paid in full. Upon all frozen deposits in excess of $10, if 20% thereof is less than $10, the liability of the resuming bank upon such deposit, shall, nevertheless, be $10.
 

 “5.'The equity remaining in the securities and property to be pledged with the Reconstruction Finance Corporation as security for its said new loan, together
 
 *504
 
 with the assessed stockholders’ liability, capital-debentures, dividends, if .any, upon capital stock of the resuming bank and the capital stock itself, shall all, to the extent hereinafter provided, be set aside in the hands of the Superintendent of Banks of the State of Ohio for the payment of the remaining eighty per cent (80%') owed to known depositors and creditors of the present bank. Participation certificates in such assets,
 
 bearing no interest,
 
 will be issued to the depositors and creditors by the Superintendent of Banks, on request of anyone entitled thereto, and
 
 such certificates shall be in lieu of the amount by ivhich the deposit and other liabilities owed to the holder have been reduced.
 
 The amounts by which the deposit and other liabilities of-the resuming bank are so reduced, whether evidenced by participation certificates or not, shall in no sense be an obligation of the resuming bank, and no liability shall be imposed upon it for the payment thereof, but such amounts shall be paid only out of the assets so set aside in the hands of the Superintendent of Banks.
 

 “6. The capital stock of the present bank shall be reduced from $7,416,450 to $741,645 by reducing the par value of each outstanding share from $50 to $5. Such reduction shall in no wise change or relieve the liability of the present stockholders, such liability being now assessed to the extent of the par value of the present shares, to wit: $50, but the certificates of stock of'the present bank issued and outstanding, shall be void and of no effect after the bank shall resume business. All the certificates for shares of stock of reduced par value shall immediately upon issuance be deposited with The National City Bank of Cleveland, Ohio. Such certificates shall be issued in the names of the present holders of stock and each of said persons shall be subject to all the provisions for liability upon such reduced par value of stock as are now fixed by the Constitution or the statutes of the state of Ohio,
 
 i. e.,
 
 he shall
 
 *505
 
 be liable to tbe extent of $5 for each share so issued. If, three years after the date of resumption of banking business, depositors and creditors have not been fully paid, The National City Bank shall deliver all said certificates to the Superintendent of Banks, who shall sell and dispose of such number of shares as may be required to complete full payment to said depositors and creditors and shall distribute any unsold shares
 
 pro rata
 
 among the persons entitled thereto. Upon any such sale, the stockholder in whose name the certificate is- issued shall have the first privilege and option of purchasing the same at $5 per share. If, during said three-year period, any dividends are declared upon the stock of the resuming bank, they shall be paid to the Superintendent of Banks for the benefit of the depositors and creditors of the present bank. No certificates of stock or earnings upon stock shall be available to the persons in whose name the stock is issued, unless and until their full stockholders’ liability now assessed plus $5 per share for each share of the resuming bank has been paid, or until depositors and creditors have been paid in full. Upon the happening of either of these events, the stockholder shall be entitled to delivery of the certificate issued in his name. The right to vote such stock, however, shall be exercised by the persons in whose names the stock is issued. While the stock is in escrow with The National City Bank, it shall not be subject to transfer.
 

 “7.
 
 The capital stock of the resuming bank and the dividends, if any, declared thereon, are pledged for the benefit of the depositors and creditors of the present bank, as hereinbefore provided, by reason of the fact that the capital stock, surplus and undivided profits of the resuming bank in the approximate amount of $1,300,000 are represented by assets of the present bank, which, although presently pledged with Eeconstruction Finance Corporation and subject, first, to
 
 *506
 
 the payment of its claim, would thereafter be available to depositors and creditors of the present bank, were they not released to the resuming bank as herein provided.
 

 “8. The Superintendent of Banks, on July 25th, made an assessment upon each stockholder of the present bank to the extent of $50 for each share of stock held by him. Payment and collection of said $50 per share shall be made as follows:
 

 “ (a) At least $5 thereof, shall be paid by the delivery to the Superintendent of Banks of capital debentures of the resuming bank purchased and paid for by the stockholder. The debentures so delivered to the superintendent shall be held by him solely for the benefit of the depositors and creditors of the present bank and may be disposed of by him at any time. The stockholder who has purchased and paid for the debentures so delivered shall have no interest therein at any time.
 

 “ (b) The balance of the $50, or such part as may be necessary, shall be collected by the superintendent three years after the time- of resumption of business by the bank in the event that any sum then remains owed to the depositors and creditors of the present bank.
 

 “(g) All the stockholders of the bank consenting to this plan agree as a part thereof that property and assets now owned by them will not be conveyed or transferred during said three-year period, except for value, and that all said property and assets or anything received in exchange therefor will be subject to the payment of such part of their unpaid assessment as may be necessary to discharge completely an amount owed to the depositors and creditors of the present bank.
 

 “9. Stockholders upon whom such assessment of $50 has been made and who do not purchase capital debentures and deliver the same to the Superintendent of
 
 *507
 
 Banks, as provided in article '(a)’ of paragraph ‘8’ foregoing, may consent in writing to an immediate sale by said superintendent of the stock issued in their names and deposited with The National City Bank. Upon his request The National City Bank shall deliver such certificates to said Superintendent of Banks, who may thereupon sell and dispose of the same for the benefit of creditors and depositors of the present bank. Collection of the assessment of $50 per share from each, of the stockholders so consenting, or such part thereof as may be necessary, shall be made three years after the resumption of business by the bank.
 

 “10. Stockholders who do not purchase capital debentures and deliver the same to the Superintendent of Banks to the extent of at least ten per cent (10%) of the amount of the par value of the stock held by them in the present bank, or who do not consent to the sale by the Superintendent of Banks of the reduced par value shares of stock issued in their names, shall be immediately subject to all processes of law by which the liability owed by them, to the extent of $50 per share, can be enforced and collected.
 

 “11. The superintendent is authorized, directly or through such agents as he may employ, fully to liquidate the assets coming into his hands under the plan, doing all things necessary in connection therewith, including the compromise and adjustment of any and all claims and the disposition and conveyance of all property, real or personal, without securing approval of the Court of Common Pleas. A contract may be made between the resuming bank and the Superintendent of Banks whereby said superintendent employs the resuming bank to perform all or a part of such liquidation.
 

 “12. Any sum owing, according to article
 
 ‘4’
 
 hereof, to any depositor who is likewise a stockholder, shall be withheld from him and paid to the resuming bank for
 
 *508
 
 the purchase of its debentures to the extent only, however, of his assessed liability as a stockholder. Such debentures shall be delivered to the Superintendent of Banks and to the extent of the par value thereof, the liability of said stockholder who is a depositor shall be paid. If and when all depositors and creditors of the present bank have been fully paid, it is ascertained that any stockholder has paid more than his
 
 pro rata
 
 share, either in cash or by the purchase of debentures, the Superintendent of Banks shall, out of any assets in his control, including the stock deposited with The National City Bank, make an adjustment thereof.” (Emphasis supplied.)
 

 The form of the consent is equally important.
 

 “Consent to Plan For Resumption of Business by The First-Central Trust Company
 

 “For the purpose of assisting in causing The First-Central Trust Company, Akron, Ohio, to resume banking business and in consideration of the execution of like agreements by such of the other stockholders, depositors and/or creditors of said bank as may execute like agreements, and in consideration of The First-Central Trust Company being permitted to resume business in the manner provided by law, I, the undersigned, in my capacity as a depositor and/or creditor, do hereby irrevocably consent to the plan for reopening and resuming business of said bank as within set forth and consent to be bound thereby and by all the terms and conditions thereof, including any alterations, changes or amendments approved by the Superintendent of Banks of the state of Ohio, and the Court of Common Pleas of Summit county, Ohio. I particularly consent that the Superintendent of Banks of Ohio may make a new loan and pledge the assets as proposed and that Reconstruction Finance Corporation shall have a first lien on the assets so pledged and may liquidate the same for the benefit of its loan, re
 
 *509
 
 turning the surplus to the Superintendent of Banks for the benefit of the participation certificates. This consent extends to all deposits which I have in or claims against said bank which are under my control, whether commercial, savings, certificates of deposit, or of other character, and whether in my name individually or in any representative, trust, or other capacity.
 

 “In my capacity as a stockholder of said bank (if such I am), I consent to the plan and particularly consent to the reduction of par value of the capital stock of the corporation as proposed; the issuance in my name of stock certificates showing such reduced par value; the delivery of such stock certificates to The National City Bank of Cleveland or other escrow agent to hold in the manner and for the purposes set forth therein; the payment to the Superintendent of Banks of the dividends, if any, declared upon said stock so deposited for the purpose of permitting payment to depositors and creditors of the present bank of the entire amount owed to them; and the creation, issuance and sale of $500,000 of capital debentures as proposed. I consent that the stock issued in my name and so held by The National City Bank may be sold by the Superintendent of Banks at any time after three years from the date of resumption of business by said bank, if depositors and other creditors have , not then been paid in full, reserving to myself only the option then to purchase the same from said superintendent upon payment to him of $5 per share.
 

 “I hereby constitute said Superintendent of Banks or any of his deputies, or any person who may succeed to his office or the functions performed by him, my true and lawful attorney-in-fact for me and in my behalf to endorse said stock certificates in the event of sale and to cause transfer thereof to be made upon the books of the corporation. If I do not purchase and deliver to the Superintendent of Banks, capital de
 
 *510
 
 bentures of The First-Central Trust Company to the extent of at least ten per cent (10%) of the amount of the par value of the stock of the present bank owned by me, I consent that said superintendent may forthwith sell the certificates of stock of reduced par value -issued in my name and held by said The National City Bank, or other escrow agent, and in such event I direct that such certificates shall be delivered by said The National City Bank to him, and I make him or any one of his deputies, my true and lawful attorney for the purpose of causing transfer of said certificates of stock to be made upon the books of the corporation. I consent that the reduction in par value of the capital stock of the present bank shall in no wise change or relieve any liability which I may now have as a stockholder of the present bank.
 

 “I further make, nominate and appoint the persons hereinbefore recited as being the reopening committee of the bank, or a majority of them, with full power of substitution, my true and lawful attorneys-in-fact, to vote for me at any meeting of the corporation called to be held for the purpose of effecting a reduction of the par value of the capital stock of the present bank, to authorize an issue of capital debentures and their sale, to elect the first board of directors of the resuming bank, to amend the code of regulations and bylaws of the bank, and to vote upon any and all subjects which may come before any meeting of the stockholders of said corporation for a period extending from the date hereof to six (6) months after the date of resumption of said bank. I hereby waive the giving of notice of any and all meetings which may be held during said period, consent that my said attorneys-in-fact, or any thereof, may execute for me any and all waivers which may be legally required and I hereby ratify and confirm all that my said attorneys-in-fact or any thereof, may do by virtue hereof. I further empower
 
 *511
 
 them to alter, change, amend or supplement the plan of resumption in such respects as may be incident or necessary, if such alterations, changes or amendments are approved by the Superintendent of Banks of the state of Ohio, and the Court of Common Pleas of Summit county, Ohio. The proxy hereby given is irrevocable. ’ ’
 

 We have no difficulty in concluding that the agreement and the consents thereto of the shareholders and depositors when approved by the court, constituted a contract between them, each class with the other, and between them as a collective class with the superintendent.
 

 The shareholders agreed to perform certain enumerated acts hereinbefore set forth and each depositor agreed to accept, in lieu of his or her claim a certain percentage in cash and a certificate of participation in the remaining assets,
 
 bearing no interest.
 
 In consideration of the agreements of the shareholders and depositors the superintendent agreed to and did consent to the plan.
 

 The record discloses that when the application to approve the plan for resumption of business was submitted to the court, the plan had been approved by depositors whose claims aggregated 86.9 per cent of the bank’s outstanding deposit liability and also by substantially all shareholders.
 

 The plan was approved by the Court of Common Pleas as submitted, with the exception that 25 per cent instead of 20 per cent of the frozen deposits were made available for immediate withdrawal.
 

 The entry of approval contains the following language :
 

 “Participation certificates in such assets,
 
 bearing no interest,
 
 will be issued to the depositors and creditors by the Superintendent of Banks, on request of anyone entitled thereto, and such certificates shall be
 
 *512
 
 in lieu of the amount by which the deposit and other liabilities owed to the holder have been reduced. The amounts by which the deposit and other liabilities of the resuming bank are so reduced, whether evidenced by participation certificates or not, shall in no sense be an obligation of the resuming bank, and no liability shall be imposed upon it for the payment thereof, but such amounts shall be paid only out of the assets so set aside in the hands of the Superintendent of Banks.” (Emphasis supplied.)
 

 No shareholder or depositor felt himself or herself sufficiently aggrieved by the judgment approving the plan of resumption of business to object thereto or to apply for leave to bring an action to restrain the enforcement of that judgment.
 

 By their consents each depositor agreed to accept a certificate of participation
 
 bearing no interest
 
 in lieu of the balance of his or her deposit; and by the judgment of the court the superintendent was authorized and directed to issue to each depositor a certificate of participation
 
 bearing no interest
 
 for the balance of his or her deposit.
 

 The superintendent did issue such a certificate of participation to each depositor by causing to be stamped upon the certificate of claim the following legend:
 

 “In accordance with the plan of reorganization of The First-Central Trust Company, Akron, Ohio, heretofore approved by the Summit county Common Pleas Court and subject to the terms and conditions appearing elsewhere hereon, this certificate of claim, after deduction of the initial dividend, is hereby converted into a certificate of participation in the assets referred to and described in said plan. This certificate
 
 shall bear no interest,
 
 and shall in no wise impose any liability for the payment thereof upon The First-Central Trust Company as reopened.” (Emphasis supplied.)
 

 
 *513
 
 A certificate of participation was in the hands of each depositor for about ten years (unless disposed of by the depositor), and the record fails to disclose that any depositor ever objected to the fact that his or her certificate of participation should
 
 bear no interest.
 

 Each certificate was paid in full.
 

 When, in 1943, it developed that there was an excess fund, then for the first time the depositors made the claim that they were entitled to interest upon the certificates of participation. We can find no persuasive reason and none has been suggested why each depositor is not bound by his or her own voluntary agreement as well as by the judgment of the Court of Com-' mon Pleas whereby the plan of resumption of business was approved.
 

 The Court of Appeals concluded that the depositors did not agree to accept certificates of' participation without interest and further that the Court of Common Pleas in providing for the issuance of such certificates omitted the phrase
 
 “bearing no interest.”
 

 With neither of those conclusions are we able to agree.
 

 The plan for resumption of business, as we read it, clearly states that
 
 “participation certificates in such assets, bearing no interest, will be issued to the depositors and creditors by the Superintendent of Banks, on request of anyone entitled thereto, and such certificates shall be in lieu of the amount by which the deposit and other liabilities owed to the holder have been reduced.”
 
 (Emphasis supplied.)
 

 The acceptance of the plan was an agreement to accept a participation certificate
 
 bearing no interest,
 
 in lieu of the depositors ’ certificates of claim. Furthermore the warrant to each depositor which entitled him or her to withdraw 25 per cent of the amount of the deposit reads in part as follows:
 

 
 *514
 

 “The undersigned, named in this instrument as the warrantee or payee, hereby directs I. J. Fulton, Superintendent of Banks, in charge of the liqioidation of The First-Central Trust Company, Akron, Ohio, to convert the certificate of claim heretofore issited to the payee, into a certificate of participation, in accordance with the plan of reorganisation of said trust company heretofore approved by the Summit county Common Pleas Court.
 

 “The payee admits that the resuming bank shall in no wise be liable for the payment of said certificate of participation, and directs the resuming bank to convert this warrant into credit and/or cash * * V’ (Emphasis supplied.)
 

 Each warrant was signed by the depositor prior to the receipt of the 25 per cent of his or her certificate of claim.
 

 As to the second conclusion of the Court of Appeals, the judgment entry of the Court of Common Pleas uses the following language, to wit:
 

 “Participation certificates in such assets, bearing no interest,
 
 will be issued to the depositors and creditors by the Superintendent of Banks, on request of anyone entitled thereto, and such certificates shall be in lieu of the amount by which the deposit and other liabilities owed to the holder have been reduced.” (Emphasis supplied.)
 

 The fact that the Court of Common Pleas ordered such certificates to be issued, plus the fact that each depositor did agree to and did accept such a certificate of participation
 
 without interest
 
 are of controlling importance in this case.
 

 Without deciding whether the depositors originally were entitled to interest, the conclusion is inescapable that now, by the judgment of the Court of Common Pleas approving the plan of resumption of business, and by the voluntary acts of the depositors,
 
 *515
 
 they are not entitled to interest upon their certificates of participation. It follows that the shareholders are entitled to this surplus fund.
 

 The conclusion reached being dispositive of the case, it becomes unnecessary to consider or determine any of the other questions presented.
 

 The judgment of the Court of Appeals should be and hereby is reversed and final judgment should and will be entered in favor of appellants.
 

 Judgment reversed and final judgment for appellants.
 

 Weyganut, C. J., Zimmerman, Williams, Turner, Matthias and Hart, JJ., concur.